**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DEBBIE KUCIVER,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | **No. 21-cv-05964** |
| v. | **The Honorable Elaine E. Bucklo** |
| **KSF ACQUISITION CORPORATION,** | **Magistrate Judge Maria Valdez** |
| Defendant. | |

**DEFENDANT KSF ACQUISITION CORPORATION
dba SLIMFAST'S MEMORANDUM OF LAW IN SUPPORT OF
<u>ITS MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>**

Defendant KSF Acquisition Corporation dba SlimFast ("SlimFast") submits this Memorandum in Support of Its Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint"). The Complaint is seriously flawed and should be dismissed in its entirety.

## INTRODUCTION

Plaintiff Debbie Kuciver's Complaint is riddled with defects. She appears to have assembled her Complaint in great haste out of desire to be the first person to capitalize on an advertising challenge filed by Simply Good Foods, the maker of the competing Atkins line of meal replacement and weight loss products, with the National Advertising Division ("NAD") of the Council of Better Business Bureaus. Indeed, many of her allegations (most notably paragraphs 1 through 24) have nothing to do with her or her experience with any product. Instead, they were borrowed from that NAD complaint and the NAD's initial decision with little to no editing and, obviously, without attribution.

Ms. Kuciver won the race to the courthouse, breaking the tape by filing on November 6, 2021, ahead of another plaintiff who filed in New York on November 15, 2021.[1] That haste explains the Complaint's shortcomings, only some of which might be curable by amendment. But shortly after Kuciver filed her Complaint, the NAD's appellate review board reversed the NAD, ruling that SlimFast has adequate substantiation for the advertising claim that its diet plan is clinically proven to help consumers lose weight and keep it off.[2]

Of course, nothing that happened before the NAD will determine the sufficiency of Ms. Kuciver's Complaint. However, to survive dismissal, she must plead **facts**—not mere

---

[1] That complaint is styled *Cawley v. KSF Acquisition Corp.*, No. 7:21-cv-09421-CS (S.D.N.Y.) A true and correct copy of the *Cawley* complaint is attached as Exhibit 1. SlimFast does not seek judicial notice of any fact beyond the ECF filing stamp establishing that the case was filed after this one.

[2] SlimFast is not relying on the NAD proceeding as either a factual basis or legal precedent to guide this Court's review of the Complaint's sufficiency. Instead, SlimFast offers this information for context.

conclusory statements—showing that the advertising claims at issue are literally false and how she, as a "reasonable consumer," was deceived and suffered an injury in fact as a result. And she must plead the facts supporting her claims with particularity. The Complaint appears to say she occasionally bought SlimFast shakes as a meal replacement, but she fails to explain how her sporadic interaction with the Products renders false any label claims that she is challenging here.

Perhaps Ms. Kuciver can cure these defects in an amended complaint that satisfies the particularity requirements of Rule 9. If the Court grants her that chance, she should stick to facts pertaining directly to her experience, not purported "facts" snipped from a competitor alleged claim that has already been debunked on appeal.

## **BACKGROUND**

### A.    **The SlimFast Plan**

The SlimFast brand is one of the most well-established and successful brands in the weight loss segment. Millions of people have lost weight by following the straightforward SlimFast Plan, which consists of: (1) one sensible meal; (2) two meal replacement shakes or smoothies; and (3) three 100-calorie snacks per day. (Compl., ¶21.) SlimFast has spent millions of dollars over decades developing products that fit within its three-step plan design, testing the efficacy of the SlimFast Plan in numerous clinical trials, and advertising the components of the SlimFast Plan to consumers via television, print, packaging and other media. From the days of Tommy Lasorda through today, consumers have been aware of the SlimFast Plan design and how it assists in losing weight.

Despite this consistent messaging and the significant amount of scientific data supporting the efficacy of the SlimFast Plan, Ms. Kuciver still complains. About what, it is not exactly clear. The Complaint includes three partial label images, none of which readily identify what product or

products they came from. Indeed, elsewhere, the Complaint lumps together "foods such as shakes, bars, and snacks," under the catch-all "Product," and Ms. Kuciver alleges she bought "Product, *such as* the SlimFast Original Royale Meal Replacement Shake." (*Id.*, at ¶43 (emphasis added).) We do not know if she bought the Original Royale Meal Replacement Shake, or whether her "such as" description was essentially a placeholder for other items (or "Product").

The few details Ms. Kuciver supplies do not support her claim. She alleges that the "Product" labels claim that the "Product" (whatever it might be) promises that "it" has been clinically-proven in four respects: (i) "Satisfies hunger;" (ii) "Energy for hours;" (iii) "4-hour hunger control;" and (iv) "control blood sugar." (*Id.*, at ¶3.) But the label images in the Complaint do not claim that the meal replacement shakes have been clinically proven to do anything. In other words, the Complaint is based, at least in part, on claims SlimFast did not make and on implausible, unreasonable readings of images displayed in the Complaint.

Ms. Kuciver further alleges "the studies relied upon to support the clinically-proven claim are from products introduced many years ago, which are no longer sold." (*Id.*, at ¶9.) But, according to her Complaint, she bought "Product" (whatever it was) "during 2020 and/or 2021, among other times." (*Id.*, at ¶43.) She seems to admit that some SlimFast brand products had been part of a clinical trial, but does not provide any facts about the clinical trials, nor allege that she ever reviewed or studied the results of such trial. Moreover, her allegations do not rule out that she bought products that had been used in clinical trials—indeed, she acknowledges purchases at "other times" (*id.*), but provides no details.

And, most importantly, it is plain from the images in the Complaint that the "clinically-proven" claim applies to the SlimFast Plan as a whole, and not to any particular product. Indeed, the meal replacements products (like shakes, smoothies or bars) themselves are only referenced in

"Step 2" of the of the three-step SlimFast Plan. (*Id.*, at ¶2.) Not only has SlimFast never actually made a "clinically proven" claim as to any individual product—and made no such claim in the images in the Complaint—no reasonable person could have been confused in that regard (much less a substantial portion of the consuming public would share that strained interpretation). Notably, Ms. Kuciver does not claim otherwise: "Consumers who view the Clinically Proven claims **will expect the Product and Plan is proven** to achieve the results indicated." (*Id.*, at ¶5 (emphasis added).) In other words, the "Products" and the "Plan" go together, and the Products are to be used as part of the Plan.

## B. The NAD Proceeding

As noted above, the allegations in the Complaint stem from an NAD panel disposition of a competitor's advertising challenge. Kuciver seeks to exploit the NAD proceeding without actually pinning herself to any product purchase, label content or, for that matter, any bad outcome resulting from her intermittent interaction with whatever SlimFast product she allegedly bought.

But, even this footing is faulty. In response to the NAD panel decision, which initially recommended that SlimFast discontinue its "clinically proven" claim, SlimFast appealed. Based on a careful review of the extensive scientific evidence in the record, the NAD Review Board agreed with SlimFast, stating:

> After carefully evaluating the evidence and arguments set forth above, the panel concludes that SlimFast has proper substantiation for its claim that the SlimFast Plan has been clinically proven. The panel recognizes that within the SlimFast Plan, there have been significant changes. . . . The panel is persuaded that the clinical studies establish the effectiveness of the SlimFast Plan even if the individual food components change.

(Exhibit 2, at p. 4.)[3]

---

[3] SlimFast requests that the Court take judicial notice of the contents of the NARB's November 22, 2021 decision pursuant to Fed. R. Evid. Rule 201(b)(2), because the contents of that document speak for themselves. SlimFast is not asking the Court to take judicial notice of the truth of the statements in the

SlimFast is not offering this discussion of the NAD proceeding to establish the truth of any of the statements from the proceeding, nor to claim that the NAD's determination is "binding" on this Court in any way. Instead, even though Ms. Kuciver won the race to the courthouse based on an NAD decision that has been overturned, she must allege facts to support the essential elements of her substantive claims with the particularity required under the Federal Rules of Civil Procedure.

## ARGUMENT

### A.    Standard of Review

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate whenever a plaintiff fails to allege sufficient facts that would entitle her to relief, or where a matter can be disposed of as a matter of law based upon facts contained in the complaint. "To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). Additionally, like all fraud claims, a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") must meet Rule 9(b)'s

---

decision. A true and correct copy of the NARB's November 22, 2021 decision is attached as Exhibit 2. The Northern District of Illinois recognizes that it is appropriate to take judicial notice of decisions such as this and has, in the past, taken judicial notice of arbitration decisions. *Green Tree Fin. Corp. v. Honeywood Dev. Corp.*, 98 C 2332, 2001 WL 62603, at *3 (N.D. Ill. Jan. 24, 2001) (taking notice of an arbitration decision and noting that "the Seventh Circuit has permitted arbitrators to take judicial notice of other arbitrators' decisions") (citing *Consolidation Coal Co. v. United Mine Workers of America*, 213 F.3d 404, 407 (7th Cir. 2000); *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n. 3 (8th Cir. 1994); *Yerkovich v. MCA Inc.*, 11 F.Supp.2d 1167, 1169 n. 2 (C.D.Cal.1997)).

heightened pleading requirements, and a Plaintiff must plead the factual basis for her claim of fraud with particularity, *i.e.*, the "who, what, when, where and how." *Stephenson v. Hartford Life and Annuity Ins. Co.*, 2003 WL 22232968, at *5-6 (N.D. Ill. Sept. 26, 2003).

### B. Plaintiff's False Advertising Claim Should Be Dismissed Because It Fails to State a Claim Under the Illinois Consumer Fraud Act or Common Law Fraud.

To state a claim under ICFA, a plaintiff must allege: (1) a deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to plaintiff, (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 850 (Ill. 2005).[4] To plead proximate cause, a plaintiff must allege with specificity that she was deceived by statements or representations made by defendant. *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) (holding that "deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives plaintiff"). Because Kuciver's claims are based upon "false and deceptive representations and omissions," (Compl., ¶ 64), Rule 9(b) applies to her ICFA claim as well as her common law fraud claim.[5] To plead either of these claims adequately, Kuciver must allege that she saw, heard, or read deceptive representations by SlimFast. *Shannon*, 805 N.E.2d at 217; *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 861-62 (Ill. 1998) (plaintiff cannot be deceived by what she did not read). Kuciver can only state valid ICFA

---

[4] Similarly, the elements of common law fraud are (i) a false statement of material fact; (ii) defendant's knowledge the statement was false; (iii) defendant's intent that the statement induce reliance (i.e., scienter); (iv) plaintiff's reliance; and (v) resulting damages. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) *quoting Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). Scienter in an essential element that must be adequately alleged or the complaint must be dismissed. *Id.* at 841.

[5] The outcome here would be the same if the Complaint were viewed under the less exacting requirements of Rule 8. The causes of action for negligent misrepresentation, breach of warranty, and unjust enrichment claims each are stated in nothing more than "check the box" fashion, which is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

and fraud claims by identifying actual statements on products she actually bought.

As has often been observed, Rule 9(b) requires facts sufficient to identify the "who, what, when, where and how" aspects of the alleged fraud. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). The Complaint is sufficient to answer the "who" question; but beyond that, it is lacking. Ms. Kuciver only vaguely alleges "when" she bought "Product"—sometime in a two-year window (and maybe some other unidentified times as well). (Compl., ¶43.) As for "where," she tells us only that she bought "at stores," identifying only one Jewel-Osco location by name. (*Id.*) As for "what" she bought, we literally have no clue. Her defined term "Product" is not unique to any specific product or even product type.

Without more detail as to the "what" she bought, there is no way for Ms. Kuciver to plead the facts necessary to show what label contents she was exposed to—the most basic element of both her ICFA and common law fraud claims—and, as a result, her claims must therefore be dismissed. *See Ibarolla v. Nutrex Research, Inc.*, 2012 WL 5381236, at *3 (N.D. Ill. Oct. 31, 2012) ("Unless Plaintiff identifies which product(s) she actually inspected and purchased, she cannot possibly state with requisite specificity the content of the alleged misrepresentation.")

Indeed, the Complaint tries to link four different messages ("controls hunger," "4 hour hunger control," "energy for hours" and "controls blood sugar") to the claim that the three-step SlimFast Plan is clinically proven, then claim that those four claims have not actually been clinically studied or proven—a substantiation claim. But context is extremely important here, because "[u]nder Illinois law, 'lack of substantiation is deceptive only when the claim at issue implies that there is substantiation for that claim, *i.e.*, if defendants had claimed something along the lines of 'tests show that [the product is question] is [] effective . . ." *Spector v. Mondelez International, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 2016) (*quoting Gredell v. Wyeth*

*Laboratories, Inc.*, 367 Ill. App. 3d 287, 854 N.E.2d 752, 756 (2006)). Unless the package actually states or implies external substantiation for a specific claim, then a plaintiff cannot sue based on lack of substantiation and must, instead, allege actual falsity of the specific claim. *Id.*

A review of the four claims at issue shows there is no statement or implication that any of them—as opposed to the three-step SlimFast Plan—has been clinically proven. The easiest to deal with is "controls blood sugar." That language appears nowhere on the label images in the Complaint, and she provides no facts that she saw that claim elsewhere, much less that she relied on it in buying her unidentified Products. The "controls hunger" and "4 hour hunger control" language appears, but the label images do not say that those claims have been clinically proven. The statement "clinically proven" is remote from these other claims, set in different fonts, and geographically and textually linked exclusively to the three-step SlimFast Plan. Accordingly, in order to state a claim under ICFA or common law fraud, she must allege facts to show injury— *i.e.*, that her product did not satisfy her hunger or supply 4 hour energy to her. *Spector*, 178 F. Supp. 3d at 673 (Plaintiff "has provided no factual basis for inferring she was injured . . . by not experiencing the four hours of 'nutritious steady energy' promised on the Product's packaging.")

Ms. Kuciver's challenge to "energy for hours" fails for the same reasons. There is no language in the images in the Complaint to link "energy for hours" to the "clinically proven" claim. Nor does the Complaint allege facts that whatever she bought failed to deliver energy for hours.

Since we do not know what she bought, how often she bought it, how she used it, or what else she ate, there is no basis to evaluate her allegations of reasonable expectations of weight loss or her adherence to the SlimFast Plan. These facts are essential to whether her interpretation of the product label is objectively reasonable and to the actual reliance elements of her fraud claim and the injury element of her ICFA claim. A consumer who faithfully follows the three-step SlimFast

Plan for weeks or months as part of a serious, concerted weight loss effort is in a much different position to claim reliance or injury than someone who bought meal replacement shakes sporadically "at stores," "on one or more occasions." The label images make clear that SlimFast intended consumers to follow the Plan in order to lose weight and keep it off.

Finally, Kuciver's common law fraud claim fails to allege facts to show scienter, in the sense that Slim Fast intended any other meaning from its label. Her only allegation of scienter is a check-the-box statement: "Defendant's fraudulent intent is evinced by its knowledge that the Product was not clinically proven." (Compl., ¶87.) This threadbare assertion is purely conclusory and, therefore, insufficient to plead intent with particularity. *Rudy v. Family Dollar Stores*, 2022 WL 345081, (N.D. Ill. Feb. 4, 2022) (dismissing fraud claim for insufficient facts to allege scienter).

This is where plausibility and common sense play a role. The Complaint pleads no facts that Kuciver believed buying meal replacement shakes every now and then over a span of two years (or more) would enable her to meet her (unstated) weight loss goals. The Complaint does not allege facts that any reasonable consumer would plausibly form such a belief from the Product labels. (Compl., ¶21.) Such incidental product use is flatly inconsistent with the three-step SlimFast Plan described in those images. In applying the "reasonable consumer" standard under both ICFA and common law fraud, this Court can employ common sense to weed out facially implausible claims. *See Galanis v. Starbucks Coffee Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (relying on "common sense" to dismiss claim regarding alleged misrepresentation of amount of coffee in iced beverages).

In short, Ms. Kuciver's Complaint does not come close to satisfying Rule 9(b) and it must be dismissed. For reasons set forth below, any leave to amend must be quite limited, because her

substantive common law causes of action have deficiencies that cannot be cured.[6]

### C. Plaintiff's Breach of Warranty Claims Fail as a Matter of Law

Although Ms. Kuciver's warranty claims are duplicative of her ICFA and fraud theories, they are also subject to unique defenses, which are addressed in turn below.

#### 1. Plaintiff Failed to Provide SlimFast With Pre-Suit Notice

To bring a cause of action for breach of warranty, Kuciver was required to notify SlimFast of the alleged breach before filing suit; otherwise, the claims are barred. Section 2-607(3)(a) of the Illinois Uniform Commercial Code states: "the buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a); *see also Connick*, 174 Ill. 2d at 492 (1996) (stating that buyers "must directly notify the seller . . . or be barred from recovery from a breach of warranty"). Illinois courts have concluded that the "purpose of the notice is to give the seller the opportunity to cure a defect and minimize damages . . . protect his ability to investigate, gather evidence, and negotiate a possible settlement." *Schreib v. Walt Disney Corp.*, 2006 WL 573008, at *5 (N.D. Ill. Feb. 1, 2006). The duty to provide notice applies equally to claims for express and implied warranties. *See Connick*, 174 Ill. 2d at 495 (1996) (finding that failure to allege sufficient notice was fatal to plaintiffs' claim for breach of express and implied warranties); *Schreib*, 2006 WL 573008, at *5 (affirming dismissal of express and implied warranty claims under the UCC).

Ms. Kuciver's Complaint effectively concedes that she did not provide pre-suit notice. She alleges only that "Plaintiff provided, *or will provide*, notice to defendant, its agents, representatives, retailers, and their employees." (Compl., ¶75 (emphasis added).) This is a word

---

[6] The Complaint purports to assert a cause of action under the unnamed "consumer fraud acts" of unnamed states based upon the unidentified purchases of unidentified products by unnamed persons. This effort obviously fails each of the "who, what, when, where and how" requirements of Rule 9(b).

salad; it is not a factual allegation of pre-suit notice. The Complaint does not allege that Kuciver took the required steps before filing her Complaint. The breach of warranty claims, both express and implied, must be dismissed for failure to give pre-suit notice.

### 2. Plaintiff Fails to State a Claim for Breach of Express Warranty

Kuciver's express warranty theory fails for the additional reason that Plaintiff does not and cannot sufficiently plead the elements of her claim. To state a claim for breach of express warranty under Illinois law, the plaintiff must allege "the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty and failure [by] the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty." *See Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 638 (Ill. App. Ct. 2001).

Plaintiff's express warranty claim fails in several respects. First, Plaintiff fails to adequately allege a contract with SlimFast giving rise to the creation of any express warranty. Plaintiff must specify the particular affirmation or promise that formed the basis of the bargain with defendant. *Heisner v. Genzyme Corp.*, 2008 WL 2940811, at *8 (N.D. Ill. July 25, 2008) (dismissing an express warranty claim where Plaintiff "offered nothing more than a formulaic recitation of the elements" of the cause of action). Because Plaintiff fails to allege what Product she bought, Plaintiff also fails to allege what the label of that Product said. Indeed, she has failed to plead facts necessary to establish the terms of the warranties she alleges, such as controls blood sugar, an expression that occurs nowhere in the images in the Complaint. (*See* Compl., ¶72.) This defect is fatal, because Plaintiff must plead facts to show that SlimFast actually warranted what she claims. *See, e.g. Spector*, 178 F. Supp. 3d at 674 (dismissing warranty claim that failed to plead facts showing defendant had made the claimed warranty). Moreover, Plaintiff's interpretation of

those words must meet the objective "reasonable consumer" standard. *Id.* No reasonable person would believe that any SlimFast product promised to aid in weight loss simply by buying the product and storing it in her pantry.

Second, Plaintiff fails to allege that she was harmed by any breach of an express warranty by SlimFast. For example, she tells us that she "would like to lose weight" (Compl., ¶44), but she does not tell us how much or whether she did lose weight. Similarly, she does not tell us that, whatever she bought, failed to control her hunger and offers no facts suggesting her blood sugar was uncontrolled. Third, Plaintiff fails to allege how any breach by SlimFast was the proximate cause of her harm.

### 3. Plaintiff Fails to State a Claim for Breach of Implied Warranty

Ms. Kuciver's breach of implied warranty theory is also fatally flawed for several reasons. In Illinois, in order to recover damages, other than for personal injury, based on a theory of implied warranty, plaintiff "must be in vertical privity of contract with the seller." *Jensen v. Bayer A.G.,* 862 N.E.2d 1091, 1099 (Ill. App. Ct. 2007); *Larry J. Soldinger Assoc. v. Aston Martin,* No 97 C 7792, 1999 WL 756174 at *6 (N.D. Ill. Sept. 13, 1999) ("In Illinois, a plaintiff may pursue a UCC breach of implied warranty claim for economic damages only if he is in privity of contract with the seller.") Kuciver cannot satisfy this element because she alleges only that she bought "Product" "at stores." (Compl., ¶43.) There is no allegation that she bought anything directly from SlimFast or that she suffered any personal injury.

Furthermore, to prevail on a claim for breach of implied warranty of fitness for a particular purpose, a plaintiff "must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew the buyer's reliance on its skill and judgment. For such a

warranty to exist, the goods must be for a purpose other than their ordinary use." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D.Ill. 2007) (citation and internal quotes omitted).

The implied warranty of merchantability imposes only a "minimal level of quality" on goods. "It does not 'impose a general requirement that the goods precisely fulfill the expectation of the buyer.'" *Skelton v. General Motors Corp.*, 500 F. Supp. 1181, 1191 (N.D. Ill. 1980), *rev'd on other grounds* 660 F.2d 311 (7th Cir. 1981). This minimal level of quality means only that the goods will pass without objection in the trade under the contract description, are fit for the ordinary purposes for which such goods are used, are adequately contained, packaged, and labeled, and conform to the promises or affirmations of fact made on the container or label. *Malawy v. Richard Mfg. Co.*, 501 N.E.2d 376, 383 (Ill. App. Ct. 1986) ("[T]he pivotal inquiry as to liability for breach of an implied warranty is whether the product conforms to the standards of merchantability …")

Here, Plaintiff's claim for breach of implied warranty fails because she tells us *nothing* about the condition of whatever "Product" she bought. There are no facts whatsoever that, if true, would show that whatever she bought would not pass without objection in the trade.

These substantive flaws in her state law warranty theories also doom her Magnuson Moss Warranty Act theory. Illinois law is clear that claims under Magnuson Moss rest upon the viability of a state law warranty theory, and without such a viable theory, the Magnuson Moss claim fails as well. *E.g.*, *Scheisser v. Ford Motor Co.*, No. 16-370, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) (MMWA claim depends upon viable underlying warranty theory). Dismissal of Kuciver's express and implied warranty theories on any ground requires dismissal of the Magnuson Moss claims as well. *Floyd v. Pepperidge Farm, Inc.*, No. 21-525, 2022 WL 203071 at * 5 (S.D. Ill. Jan. 4, 2022) (MMWA claim fails when state law warranty claims are dismissed).

### D. Plaintiff's Claim for Negligent Misrepresentation is Barred by the Economic Loss Rule.

As noted above, Ms. Kuciver's alleged injuries are purely economic, in what she alleges was paying too high a price for "Products." (Compl., ¶78.) She alleges no facts to show any personal injuries or property damage. This is buttressed by her (also flawed) claim for "unjust enrichment," which describes only "inequitably gained profits"—i.e., money. (*Id.*) That theory is not viable under Illinois law. Instead, the economic loss rule bars any tort claim based upon a purchaser's disappointed commercial expectations. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 451-52 (1982).

### E. Plaintiff's Unjust Enrichment Theory Fails.

Finally, Illinois law does not recognize a stand-alone claim for unjust enrichment. Instead, such a theory will stand or fall on the sufficiency of underlying contract or tort claims. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Where, as here, the theory of unjust enrichment flows from the conduct she labels as deceptive or fraudulent, dismissal of the underlying claim means the unjust enrichment theory must be dismissed as well. *Ass'n Benefit Sers., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). *See also Floyd v. Pepperidge Farm, Inc.*, 21-CV-525-SPM, 2022 WL 203071, at *7 (S.D. Ill. Jan. 24, 2022) (dismissing unjust enrichment theory where plaintiffs failed to plead plausible theory of deception); *accord Bober v. Glaxo Welcome Plc.*, 246 F.3d 934, 943 (7th Cir. 2001) (when consumer fraud claim failed, unjust enrichment also failed; "in the absence of any deception on the part of the defendants, the requisite violation of 'fundamental principles of justice, equity, and good conscience' is not present").

## <u>CONCLUSION</u>

For all of the foregoing reasons, SlimFast respectfully requests that this Court grant its Motion to Dismiss in its entirety.

Dated:  March 22, 2022

Respectfully submitted,

By: */s/ Brian D. Straw*

Ricky L. Shackelford (*pro hac vice* pending)
Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
(310) 586-7700 (Main)
(310) 586-7800 (Facsimile)
shackelfordr@gtlaw.com

Brian D. Straw
Greenberg Traurig
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400 (Main)
(312) 456-8435 (Facsimile)
strawb@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Brian D. Straw, an attorney, certify that I electronically filed Defendant KSF Acquisition Corporation's Memorandum of Law in Support of Its Motion to Dismiss the Class Action Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record on March 22, 2022.

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Road, Suite 409
Great Neck, NY 11021
Email: spencer@spencersheehan.com

*/s/ Brian D. Straw*_____

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JAIMIE CAWLEY, on behalf of herself and all
others similarly situated,

                        Plaintiff,

     v.

KSF ACQUISITION CORPORATION d/b/a
SlimFast and Slim-Fast,

                   Defendant.

---

Case No.: 7:21-cv-09421

**COMPLAINT**

Plaintiff Jaimie Cawley, on behalf of herself and all others similarly situated ("Plaintiff"),

by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against

KSF Acquisition Corporation d/b/a SlimFast and Slim-Fast ("KSF," "Defendant," or

"SlimFast"), as follows:

## PRELIMINARY STATEMENT

> *"[SlimFast's] clinical studies demonstrate dieters will lose weight*
> *if they consistently adhere to 1200-1400 calories a day, **not** that*
> *the current Slim[F]ast products are clinically proven to promote*
> *and help maintain weight-loss." (emphasis added)*
>
> *National Advertising Division, BBB National Programs,*
> *August 27, 2021*

    1.    Weight is a significant public health issue in the United States with which our

consumer culture is obsessed. This obsession has been fueled by, among other things, an

alarming increase in the incidence of obesity, diabetes, cardiovascular diseases, and other health

conditions that are closely correlated with weight. Disturbingly, the CDC reported that 78% of

deceased Covid-19 patients had obesity or were overweight. As a result, the U.S. weight loss

consumer market reached a record value of $78 billion in 2019. Domestically, the highly

competitive meal replacement products segment of the weight loss industry generated over $9 billion in 2020 and is forecast to grow to over $12.5 billion by 2025.  Unsurprisingly, manufacturers have preyed upon consumers' concerns about weight gain and have flooded the marketplace with products promising to help consumers lose weight and keep it off.

2.      Defendant owns, operates, and does business as the branded weight loss and dietary food product business, SlimFast.  Defendant manufactures, markets, and sells SlimFast weight loss plans and food products, including meal replacement products.

3.      In a crowded field of meal replacement products, manufacturers aggressively compete with one another to differentiate their respective products and gain valuable market share.  In order to capitalize on ballooning consumer demand and increase its market share, Defendant has made false, misleading, and deceptive representations to consumers about the efficacy of its meal replacement products; specifically, that its products are "clinically proven" to cause and maintain weight-loss.

4.      Central to its ubiquitous marketing and advertising claims is Defendant's proclamation that each of its over fifty-three (53) SlimFast meal replacement products is "CLINICALLY PROVEN" to help consumers "LOSE WEIGHT & KEEP IT OFF." (the "Clinically Proven Claim").  As the National Advertising Division of BBB National Programs (the "NAD")[1] has stated, however, representations that a product's efficacy has been "clinically proven" "must closely match the underlying evidence because they are a promise that there is

---

[1]    The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising.  It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative.  The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business.  An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission.  NAD referrals receive priority treatment from the Federal Trade Commission.

scientific evidence that establishes the truth of the claim. [Such] claims … convey an especially strong message to consumers." NAD Decision[2] at 3, n. 7.

5. Unfortunately for unsuspecting consumers, however, the clinical studies and reports relied upon by Defendant do not support its Clinically Proven Claim because none of the SlimFast meal replacement products with respect to which Defendant has asserted the Clinically Proven Claim have been scientifically proven to achieve and maintain weight loss. Accordingly, the Clinically Proven Claim is false and misleading with respect to each of the SlimFast Products (defined herein, *infra* at ¶ 31).

6. Indeed, as set forth in the recent NAD Decision criticizing Defendant's use of the "clinically proven" moniker, Defendant has acknowledged "that SlimFast has not clinically tested the weight-loss efficacy of any of its current products that bear the claim 'clinically proven to lose weight and keep it off.'"[3] Moreover, as the NAD noted, Defendant did not dispute the fact that all of the clinical studies it relies on to support the Clinically Proven Claim tested products and plans that are ***different than*** any of the current SlimFast Products and Plans.[4] Stated otherwise, this is not a lack of substantiation claim; it is an affirmative falsehood based on the absence of <u>any</u> testing. Arrogantly, SlimFast did not even bother with the trope of an "Industry Funded Study." Instead, they just made claims divorced from any pretext of being "clinically proven."

7. Defendant's Clinically Proven Claim is patently false and misleading with respect to each of the SlimFast Products because each such product (i) has not been "clinically proven" to cause weight loss; and (ii) has not been "clinically proven" to maintain weight loss.

---

[2] All references herein to the "NAD Decision" are to the decision rendered by the NAD in *KSF Acquisition Corp. (Slim-Fast) v. Simply Good Foods, USA, Inc., Report #6952, NAD Case Reports (Aug. 27, 2021)*.

[3] *Id*. at 6.

[4] *Id*. at 6.

8.  By deceptively misrepresenting the efficacy of each SlimFast Product, Defendant has defrauded consumers into purchasing the SlimFast Products and has commanded and continues to command a price premium for each such product.

9.  Based on SlimFast's unfair and deceptive Clinically Proven Claim, Plaintiff and consumers like her purchased SlimFast Products that they believed were clinically proven to cause and maintain weight-loss, and they purchased such Products with a reasonable expectation as to their premium quality and efficacy. Moreover, Plaintiff purchased such SlimFast Products notwithstanding the fact that similar meal replacement products not marketed as clinically proven to cause and maintain weight loss were available from other manufacturers for much less money. Accordingly, Plaintiff and her fellow class members have been injured because they purchased meal replacement products that they would not have otherwise purchased and/or they paid a premium for meal replacement products that were purported to be clinically proven to cause and maintain weight-loss but were, in actuality, not clinically proven to be an effective means for losing and maintaining weight. Simply put, Plaintiff and members of the class were deceived by Defendant's fraudulent marketing of the SlimFast Products and Defendant profited from that deception at Plaintiff's and the class members' expense.

10. By way of this action, Plaintiff seeks to put an end to Defendant's unfair and deceptive marketing campaign built upon the premise that Defendant's products are "clinically proven" and to obtain the financial redress to which Plaintiff and her fellow class members are entitled.[5]

### THE PARTIES

11. Plaintiff Jaimie Cawley is an individual who resides in Yonkers, New York.

---

5   Similarly, Plaintiff seeks to put other meal replacement product manufacturers on notice that their unlawful conduct will not be ignored so that they stop misleading consumers.

12.     Defendant KSF Acquisition Corporation is a Delaware corporation with its principal address at 11780 US Highway One, Suite 400N, Palm Beach Gardens, Florida 33408, and a mailing address located at 3500 Lacey Road, Suite 1200, Downers Grove, Illinois 60515.

13.     KSF is registered with the Florida Department of State, Division of Corporations and, upon information and belief, owns, operates, and does business as Slim-Fast and SlimFast. KSF has registered the names Slim-Fast and SlimFast with the Florida Department of State, Division of Corporations.

14.     SlimFast manufactures, packages, markets, distributes, and sells (both online directly to consumers and through other online and brick-and-mortar retail stores, such as Walmart, Sam's Club, Amazon, Target, Shop SlimFast, Publix, Kroger, Meijer, Shipt, and Instacart), over fifty three (53) different meal replacement and weight management products and plans, including shakes, smoothie and shake mixes, snacks, meal bars, and more.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

16.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

17.     This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## CHOICE OF LAW

19.     New York law governs the state law claims asserted herein by Plaintiff and the New York class she seeks to represent.

20.     New York has a substantial interest in protecting the rights and interests of New York residents against wrongdoing by companies that market and distribute their products within the State of New York.

## FACTUAL BACKGROUND

**I.      Due to the Premium Consumers are Willing to Pay for Products That are Backed by Science, Manufacturers Routinely Misrepresent That Their Products Have Been Scientifically Proven to be Effective.**

21.     Consumers who are concerned about health are particularly vulnerable targets for unscrupulous manufacturers and advertisers.  Such consumers are willing to pay a premium for health products that are scientifically proven to be effective.  In an overcrowded marketplace where beneficial health claims are ubiquitous, being able to demonstrate the efficacy of a product is critical.  Unsurprisingly, in order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not.  Equally unsurprising is the fact that Courts are wary of claims by manufacturers that their product has been scientifically proven to be effective when those claims are false.

22.     Establishment claims are held to the highest standard of proof because the message that they convey to consumers is especially strong.  As the NAD has repeatedly stated,

"[e]stablishment claims are powerful claims that should be reserved for products that have clinical human testing as support."[6]

23.     An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence," which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[7]  As the FTC has stated, "well-controlled human clinical studies are the most reliable form of evidence."[8]

24.     Defendant is not alone in preying upon consumers with false promises of a product's submission to "clinical testing" in order to mislead and defraud consumers.

25.     For example, multiple class action lawsuits were commenced against Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "Reckitt") beginning in or about June 2020, based on their allegedly false advertising claims that their Neuriva products are "backed by science" and "clinically proven" to improve brain performance (the "Neuriva Class Actions"). Similar to SlimFast's Clinically Proven Claim, the front packaging of the Neuriva products included the claim that Neuriva contains "Clinically Proven Natural Ingredients" that improve "Brain Performance" in the areas of "Focus, Memory, Learning, Accuracy, [and] Concentration."  *See, e.g.*, *Williams v. Reckitt Benckiser LLC*, Case No. 1:20-cv-23564-MGC (S.D. Florida).

---

[6]     NAD Decision at 10 (citations omitted).

[7]     FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[8]     FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

26.     After getting caught intentionally mislabeling its products, Reckitt agreed to pay more than $10 million and change their product labeling as part of a settlement.

27.     Similarly, multiple class action lawsuits were commenced against The Dannon Company, Inc. ("Dannon") alleging that Dannon had falsely and/or deceptively advertised that its probiotic yogurts, including Activia, offer clinically and scientifically proven health benefits. By way of example, similar to SlimFast's Clinically Proven Claim, Dannon falsely stated on the Activia label and other advertisements for the product that with "natural culture *Bifidus Regularis*, Activia eaten everyday is ***clinically proven*** to help regulate your digestive system in two weeks." (emphasis added) Moreover, Dannon prominently claimed inside every Activia label "CLINICALLY PROVEN to help in two weeks, when eaten daily." Having been caught mislabeling its products, Dannon agreed to pay more than $50 million as part of a class wide settlement.

28.     Indeed, this is not the first time that Defendant has been brought to task for improperly attempting to take advantage of the substantial consumer demand for weight loss products and for engaging in efforts to cash in on that demand through false and misleading claims regarding its products. In April 2020, a class action lawsuit was filed against SlimFast in the United States District Court, Southern District of New York, alleging that the company had made false representations of "clinically proven" weight loss results for SlimFast's Keto MCT Oil coconut oil-based product. *See Maroney v. KSF Acquisition Corporation d/b/a SlimFast*, Case No. 7:20-cv-02788-CS (S.D.N.Y.) (the "SlimFast Keto MCT Oil Class Action"). The SlimFast Keto MCT Oil Class Action remains pending as of the date of this filing.

## II.    SlimFast Espouses the Efficacy of the SlimFast Products.

29.    SlimFast was launched in 1977 as a controlled, low-calorie, meal replacement-based plan accounting for approximately 1,200 calories per day.

30.    Today, SlimFast is one of the most recognizable names in the diet industry, offering four different weight loss plans – the SlimFast Favorite Foods Plan, the SlimFast Keto Plan, the current SlimFast Original Plan, and the SlimFast Diabetic Weight Loss Plan (the "SlimFast Diabetic Plan," collectively with the SlimFast Favorite Foods Plan, the SlimFast Keto Plan, and the current SlimFast Original Plan, the current "SlimFast Weight Loss  Plans") – and more than fifty three (53) different meal replacement products, including, without limitation, shakes, smoothies, bars, and snacks.

31.    SlimFast currently offers five (5) different lines of meal replacement products, including the SlimFast Original, Advanced Nutrition, Advanced Energy, Keto, and Diabetic Weight Loss lines.  ("SlimFast Products")

32.    Defendant markets, distributes, and sells each of the SlimFast Products to consumers throughout the United States, including in New York.

33.    Armed with the knowledge that meal replacement products that are clinically proven to cause and maintain weight-loss are in great demand and, moreover, command a premium price as compared to meal replacement products the efficacy of which has not been scientifically established, Defendant, via its website, product packaging, and software application called the SlimFast Together app (the "SlimFast App"), as well as through various other platforms – including television and Internet advertisements, and social media – markets each of the SlimFast Products by prominently displaying the assertion that the product is "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF."

9

34.     The packaging of each SlimFast Product prominently bears the Clinically Proven Claim in all capital letters alongside and proximate to other text and imagery that is product-focused, such as the product flavor, net carbohydrates, protein content, fiber content, and "free from" statements.

35.     The following exemplars depict Defendant's use of the Clinically Proven Claim on the packaging of each of its SlimFast Products. The packaging of each and every one of the SlimFast Products displays the Clinically Proven Claim in substantially the same way.

36.     The following is the product packaging for the SlimFast Original Shake Mix:



*See* https://shop.slimfast.com/collections/shake-mixes/products/slimfast-original-shake-mixes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

37.    The following is the product packaging for the SlimFast Advanced Nutrition Shake:

11



*See* https://shop.slimfast.com/collections/ready-to-drink/products/slimfast-advanced-nutrition-shakes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

      38.     The following is the product packaging for the SlimFast Advanced Energy Shake:



*See* https://shop.slimfast.com/collections/ready-to-drink/products/slimfast-advanced-energy-shakes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

39.    On both its website and the SlimFast App, Defendant makes the same Clinically Proven Claim with respect to each of the SlimFast Products by featuring images of the packaging for each of the SlimFast Products.

13

### III.   **The Clinically Proven Claim is False and Designed to Deceive Consumers.**

40.   Reasonable consumers understand the Clinically Proven Claim to convey that each SlimFast Product on which it appears has been clinically proven to cause and maintain weight loss.

41.   Defendant's Clinically Proven Claim, however, is patently false and misleading with respect to each of the SlimFast Products on which it appears because, among other things, the purported clinical studies and reports relied upon by Defendant to support its Clinically Proven Claim are <u>not</u> about the efficacy of the actual product to which the "Clinically Proven" moniker is attached.  There is no transitive property of "Clinically Proven" to untested products.

42.   As set forth in the NAD Decision, Defendant has acknowledged "that SlimFast has not clinically tested the weight-loss efficacy of any of its current products that bear the claim 'clinically proven to lose weight and keep it off.'"[9]  Moreover, as the NAD noted in its Decision, Defendant did not dispute the fact that all of the clinical studies it relies on to support the Clinically Proven Claim tested products and plans that are different from any of the current SlimFast Product and Plans.[10]

43.   Accordingly, the Clinically Proven Claim is false and misleading with respect to each of the SlimFast Products.

### IV.   **To the Extent Defendant Maintains that its Clinically Proven Claim is Qualified by Referencing the Use of the SlimFast Products as Part of the SlimFast Plan, it Nevertheless is False and Misleading.**

44.   During the NAD proceeding, SlimFast tried to avoid the deception of, and its inability to prove, the Clinically Proven Claim by asserting that the Clinically Proven Claim was qualified by an obscured and all-together hidden reference to "when used as part of the SlimFast

---

[9]   NAD Decision at 6.

[10]   NAD Decision at 6.

Plan" (the "Purported Claim Qualification"). Plaintiff did not see and was not aware of the Purported Claim Qualification at the time that she purchased each of the SlimFast Products. Nor would any purchaser reasonably be expected to detect (let alone understand the significance of) that "disclosure." Unlike the Clinically Proven Claim, which is prominently featured on the front of each SlimFast Product package in all capital letters, the Purported Claim Qualification is inconspicuous – almost microscopic – appearing only on either the back or bottom of the product packaging (depending on the product), in tiny print, below multiple paragraphs of other information and, depending on the SlimFast Product, below pictures of other SlimFast Products.

45. The following is an example of how the Purported Claim Qualification appears, if at all, on the product packaging of the SlimFast Products:



*See* https://smile.amazon.com/SlimFast-Snacks-Peanut-Butter-Grams/dp/B07H7NPY5D/ref=sr_1_5?dchild=1&keywords=slimfast+keto+fat+bomb+snack+cup&qid=1632967641&rdc=1&sr=8-5 (last viewed on September 29, 2021).

46.    Significantly, the Purported Claim Qualification relates not to the efficacy of the product, but rather the speed at which one should expect to see "results in just one week." Implicit in that representation is the understanding that non-adherence to the "SlimFast Plan,"

would not negate all efficacy, rather it would just delay a rapid result. Moreover, virtually anyone would be challenged to find, see, and read the Purported Claim Qualification. As echoed by the NAD, it is highly unlikely that any consumer will see the Claim Qualification. *See* NAD Decision at 4 (the "NAD determined that the 'when used as part of the SlimFast Plan' was not clear and conspicuous because it appears on the back of the package while the prominent clinically proven claim appears on the front of [sic] package. Therefore, it is unlikely that consumers will see the disclosure. In addition, NAD was concerned that the disclosure does not appear on the website or smart phone app.") (citations omitted).

47. Moreover, as the NAD noted, the Purported Claim Qualification ***does not appear on*** either the SlimFast website or the SlimFast App, as only images of the front of SlimFast Product packaging materials are contained on the website and SlimFast App.

## V.   <u>Plaintiff Purchased the SlimFast Products.</u>

48. Beginning in or about early 2021, Plaintiff purchased the Advanced Nutrition Shakes and SlimFast meal replacement bars at her local ShopRite (Scarsdale, NY) and Target (Mt. Vernon, NY) retailers. Plaintiff purchased these products repeatedly, over an approximately three month period.

49. Prior to purchasing the SlimFast Products, Plaintiff was exposed to Defendant's on-line, social media advertising regarding its "Clinically Proven" claim. In addition, Plaintiff reviewed the product packaging, which stated that the SlimFast Product was "clinically proven" to achieve and maintain weight-loss.

50. Plaintiff purchased the SlimFast Product believing that it was clinically proven to achieve and maintain weight-loss. Plaintiff neither achieved nor maintained weight-loss.

51. Had Plaintiff known that the SlimFast Product was not clinically proven to achieve and maintain weight-loss, she would not have purchased it or, at the very least, would

not have paid the price premium charged for meal replacement products that purport to achieve

and maintain weight-loss.

## CLASS DEFINITION AND ALLEGATIONS

52.     Plaintiff brings this action on behalf of herself and all other similarly situated

consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure,

and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations
> period, purchased in the State of New York (whether online or in-
> person) SlimFast Products – manufactured, marketed, distributed
> and/or sold by Defendant which Defendant warranted as being
> "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" (the
> "Class Products").  Excluded from the class are Defendant, its
> parents, subsidiaries, affiliates, officers and directors, judicial
> officers and their immediate family members and associated court
> staff assigned to this case, and those who purchased Class Products
> for resale.

53.     Plaintiff expressly disclaims any intent to seek any recovery in this action for

personal injuries that she or any Class member may have suffered.

54.     **Numerosity**.  This action is appropriately suited for a class action.  The members

of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff

is informed, believes, and thereon alleges, that the proposed Class contains thousands of

purchasers of the Class Products who have been damaged by SlimFast's conduct as alleged

herein.  The precise number of Class members is unknown to Plaintiff.

55.     **Existence and Predominance of Common Questions of Law and Fact**.  This

action involves questions of law and fact common to the Class.  The common legal and factual

questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New
  York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold each Class Product as "clinically proven" to cause and maintain weight loss.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as clinically proven to cause and maintain weight loss was and/or is false, fraudulent, deceptive, and/or misleading.

56. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to SlimFast's blatant misrepresentations of material information. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

57. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Class Product, and she was harmed by SlimFast's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of SlimFast's conduct, as did all Class members who purchased Class Products.

58. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against SlimFast. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the

issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

59.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent SlimFast from engaging in the acts described.  Unless a Class is certified, SlimFast will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.  Unless a Class-wide injunction is issued, SlimFast will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

60.     SlimFast has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

### As and for a First Cause of Action
### (Violation of New York General Business Law Section 349)

61.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 60 as if fully set forth herein.

62.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

63.     By labeling, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" SlimFast engaged in, and continues to engage in, deceptive acts and practices because the Class Products are not, in fact, clinically proven to cause and maintain weight loss.

64. In taking these actions, SlimFast failed to disclose material information about its products, which omissions were misleading in a material respect to consumers and resulted in the purchase of SlimFast's products.

65. SlimFast has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

66. SlimFast's conduct was consumer oriented.

67. SlimFast engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

68. SlimFast's misrepresentations were misleading in a material respect as to whether the efficacy of each Class Product is clinically proven.

69. SlimFast knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing SlimFast's Products and/or paying a premium price for the SlimFast Products.

70. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of SlimFast's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what SlimFast represents it to be.

71. By reason of the foregoing, SlimFast's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and SlimFast is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

72.     SlimFast's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by SlimFast willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

73.     Plaintiff further demands injunctive relief enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 349 of the New York General Business Law.

**As and for a Second Cause of Action**
**(Violation of New York General Business Law Section 350)**

74.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 60 as if fully set forth herein.

75.     SlimFast's labeling, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in SlimFast's sole possession and, thus, is "false advertising."

76.     No rational individual would purchase the Class Products at the premium prices at which they are sold in full knowledge that they are not clinically proven to cause and maintain weight loss, which is how SlimFast markets the Class Products.

77.     SlimFast's advertisements and marketing of the Class Products as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" were consumer oriented.

78.     SlimFast's advertisements and marketing of the Class Products as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" were misleading in a material respect.

79. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by overpaying for a product that has diminished value due to its false claim of being "clinically proven."

80. SlimFast's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and SlimFast is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

81. SlimFast continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff and the members of the Class.

82. Plaintiff further demands injunctive relief enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against SlimFast as follows:

A. Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's First Cause of Action, awarding against SlimFast the damages that Plaintiff and the other members of the Class have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C. On Plaintiff's Second Cause of Action, awarding against SlimFast the damages that Plaintiff and the other members of the Class have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D. On Plaintiff's First and Second Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E. Enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and/or 350 of the New York General Business Law

F. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 15, 2021
White Plains, New York

**DENLEA & CARTON LLP**

By:  _/s/ Jeffrey I. Carton_
James R. Denlea
Jeffrey I. Carton
Amber T. Wallace
David M. Rubinstein
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
awallace@denleacarton.com
drubinstein@denleacarton.com
_Attorneys for Plaintiff_

# EXHIBIT 2



## NARB PANEL #290 – November 22, 2021

**Appeal of the NAD Final Decision #6952 Regarding Claims for
SlimFast Foods Company, SlimFast Food Products & Weight Loss Plans**

### *Panel Members*

**Timothy Hendrick (Chair)**
Associate Professor, Advertising
School of Journalism & Mass Communication
San Jose State University

| **Valerie Light** | **Ian McDonald** |
|---|---|
| Former Manager, Broadcast Production | Global Category Manager, Marketing Procurement |
| Verizon Communications | Edgewell Personal Care Brands |

**Meredith Vaughan**
CEO
Vladimir Jones

*Representing the National Advertising Review Board*
Kenneth A. Plevan, Chair
Heather Hippsley, Acting Vice Chair
Saveeta Dhanai, NARB Coordinator

*Representing the BBB National Programs*
Mary Engle, Executive Vice President, Policy

*Representing the National Advertising Division*
Laura Brett, Vice President
Katherine Armstrong, Deputy Director
Melissa Brown, Attorney

*Representing SlimFast Foods Company*
David Mallen, Partner, Loeb & Loeb
Paul Freeborn, General Counsel, Americas, Glanbia Performance Nutrition
M. Lily Woodland, Senior Counsel, Glanbia Performance Nutrition
Lydia Bazzano, MD, PhD, Professor, Nutrition Research, Director, Tulane Center for Lifespan Epidemiology

*Representing Simply Good Foods, Co.*
John Villafranco, Partner, Kelley Drye & Warren LLP
Jennifer Fried, Special Counsel, Kelley Drye & Warren LLP
Liliya Donovan, Senior Corporate Counsel, Simply Good Foods, Co.
Timothy Kraft, General Counsel, Simply Good Foods, Co.

6952_290
Page 2



## REPORT OF NARB PANEL 290

Decision Issued: November 22, 2021

**Appeal of the NAD Final Decision #6952 Regarding Claims for
SlimFast Foods Company, SlimFast Food Products & Weight Loss Plans**

At issue in this appeal to the National Advertising Review Board ("NARB") are advertising claims being disseminated by SlimFast Food Company ("SlimFast") for SlimFast weight loss plans and SlimFast food products. Among other recommendations, the National Advertising Division ("NAD"), in Case #6952, dated August 27, 2021, recommended that the advertiser discontinue advertising claims communicating, directly or by implication, that SlimFast weight loss plans and/or individual products were "clinically proven" to result in weight loss, for example: "Clinically Proven: Lose weight and keep it off." The challenger is Simply Good Foods ("SGF"), the distributor of the Atkins diet plans.[1]

## BACKGROUND

SlimFast was launched in 1977 as a controlled, low-calorie, meal replacement-based plan accounting for approximately 1200 calories per day. See NAD Decision at 3. According to NAD and the challenger, SlimFast currently offers three versions of the SlimFast plan: (i) an "Original" plan; (ii) a "Keto" plan; and (iii) a "Diabetic" plan. However, in its brief to the NARB, the advertiser stated that the Diabetic plan option has been phased out. SlimFast further represented that claims related to its "now-discontinued line of diabetic-friendly products . . . are not . . . the subject of the appeal before NARB."[2]

The appeal addresses SlimFast's claims: (i) "Clinically Proven;" and (ii) "Clinically Proven: Lose Weight and Keep It Off"; as well as (iii) "Clinically Proven: Lose Weight and Keep It Off When Used as Part of the SlimFast Plan." This latter claim has not been in use literally but represents what the advertiser asserts is its intended "clinically proven" message.

In its presentations to this panel, the advertiser referred to its SlimFast plan options as different versions of one "Plan." According to the advertiser, the SlimFast Plan can be summarized by reference to the slogan "1-2-3" – the Plan consists of, per day, **one** sensible meal, **two** meals replaced with shakes, smoothies or bars, and **three** snacks between meals to satisfy hunger.

---

[1]  Excluded from the scope of this proceeding is SlimFast MTC Oil, a dietary supplement. See NAD Decision at 1, n.1.

[2]  The advertiser also stated that it has not appealed any issues related to claims involving hunger control. The panel construes these acknowledgments as a modification to the Advertiser's Statement submitted to the NAD. Any future compliance issue related to SlimFast's diabetic-friendly products or claims involving hunger control would be considered by NAD, not NARB.



## DISCUSSION

The issues before the panel can be organized into three categories. Each is discussed below.

### 1. **Clinically-Proven Claim on the Package Facing Panel**

The claim "Clinically Proven: Lose Weight and Keep It Off," appears prominently on the facing panel of each of SlimFast's more than forty food products (shakes, snacks, and bars), as well as in other SlimFast marketing materials. The advertiser argues that the quoted language is not communicating a clinically-proven claim for any of its food products individually. Rather, it argues that reasonable consumers understand that the "clinically-proven" claim on the package and elsewhere refers to the use of the SlimFast food products as part of the SlimFast Plan.

NAD disagreed and recommended discontinuance of the claim. NAD concluded that reasonable consumers could understand the claim to communicate that the individual SlimFast food products had been clinically tested and shown to result in weight loss. The challenger argues the package context supports NAD's conclusion, pointing to product-focused claims on the label, for example, free from gluten and artificial sweeteners on certain products. While the advertiser points to references to the Plan on the rear panel of the packaging, NAD discounted those references as not providing "clear and conspicuous" explanatory language to modify the express statement on the front of the package.

On this issue, the panel agrees with NAD and the challenger. One of the messages reasonably communicated by the "clinically proven – lose weight & keep it off" claim on the package is that individual SlimFast food products have been clinically proven to result in weight loss. The advertiser, however, acknowledges that individual products have not been clinically evaluated. Accordingly, unqualified clinically-proven claims for the products are unsubstantiated.

### 2. **Clinically-Proven Claim Applied to the SlimFast Plan**

The advertiser contends, as noted, that its clinically-proven claims refer to its Plan. For that reason, NAD evaluated not only the claim as it appears on the packaging, but also the implied claim: "Clinically Proven: Lose Weight and Keep It Off When Used as Part of the SlimFast Plan," even though, as noted, this exact claim does not actually appear in any of the advertiser's materials.

The original SlimFast Plan was the subject of extensive clinical testing. In the more than 10 years since that testing was completed, individual SlimFast products have been revised and updated. The advertiser argues that its clinically proven claims are properly supported based on its clinical testing because the essential components of its plan, the 1-2-3 formulation discussed above, has not changed since the clinical testing was completed. It argues that the testing showed clinically proven results over a wide variety of Plan options, thus strengthening the evidence that the Plan is clinically shown to result in weight loss. The advertiser further argues that the modifications to its

6952_290
Page 4



products represent improvements reflecting advances in nutrition science that could only enhance the effectiveness of its Plan.

The challenger argues that the clinical studies on SlimFast products relied on by the advertiser did not use the SlimFast products on the market today. It also points to changes in the amounts of carbs, fat, and protein recommended by SlimFast. Further, it challenges the relevance of the SlimFast clinical studies by pointing out that none were conducted using a diabetic population or subjects who follow ketogenic diets, yet the advertiser has used its clinically-proven claims to promote its food products intended to be used in its diabetic and keto plans.

In support of its position, the advertiser offered statements from two experts. Professor David B. Allison concluded that "the SlimFast Plan as it relates to the current products has been clinically proven to help people lose weight and keep it off."  Another expert, Professor Lydia Angela Louise Bazzano, reached the same conclusion. She also concluded that "meal replacements in general are effective for weight loss through multiple mechanisms which do not depend on macronutrient contents."

Based on its expert statements, SlimFast argues that it has met the relevant test for scientific support – standards set by experts in the field. It points out that the challenger did not offer any contrary evidence and, accordingly, the advertiser argues, NAD did not have a proper basis for rejecting the conclusions of the advertiser's experts. The challenger disputes that experts hired by a party can create an exemption to the standard that products claiming to have been clinically tested need to actually be tested.

NAD concluded that the clinically-proven claims under consideration "expressly and by implication convey the message that the current products themselves have been clinically proven to allow consumers to lose weight and keep it off."  NAD Decision at 9. In reaching a decision to recommend that the clinically-proven claims be discontinued, NAD noted that "establishment claims convey powerful messages to consumers" (NAD Decision at 10), "[a] high standard for establishment claims promotes fairness in the marketplace" (id. at 11), and that "[p]eople who are concerned about losing weight are a vulnerable target audience."  Id.

After carefully evaluating the evidence and arguments set forth above, the panel concludes that SlimFast has proper substantiation for its claim that the SlimFast Plan has been clinically proven. The panel recognizes that within the SlimFast Plan, there have been significant changes. For example, the challenger points out that the SlimFast Plan that was in place at the time of the clinical testing called for 54% carbs, 19% protein, and 27% fat. In the current SlimFast Keto Plan, the ratios are 60-80% fat, 15-35% protein, and 5-10% carbs. The panel is persuaded that the clinical studies establish the effectiveness of the SlimFast Plan even if the individual food components change.

To ensure, however, that consumers are not confused or misled, the panel recommends that any



use in advertising of the clinically-proven claim should include, in the body of the claim, an express reference to the SlimFast Plan as well as an explanation of the three components of the Plan.[3]

### 3. The Keep-It-Off Portion of the Claim

NAD reviewed the evidence in the record to evaluate the extent to which SlimFast Plan followers "keep it off" (keep off weight lost while following the Plan). NAD concluded that "some percentage of weight is also regained after the initial weight loss." NAD Decision at 8; id. at 8 n. 25. NAD's analysis of the data in the record indicated that as much as 22% of the weight lost after 6 months was regained after another 6 months.

As a consequence of this analysis, NAD concluded that claims that low calorie diets allow users to lose weight and keep it off should be qualified with a disclosure, made "clearly and conspicuously, in close proximity to the main claim, that long term weight maintenance will likely include some weight regain." NAD Decision at 14.

The panel concludes that a 22% reduction in weight loss after one year falls within the scope of a reasonable interpretation of the claim "lose weight and keep it off." Accordingly, the panel declines to adopt this aspect of NAD recommendations.

### CONCLUSION AND RECOMMENDATIONS

The panel recommends that unqualified clinically-proven claims, including "Clinically Proven: Lose Weight and Keep It Off" be discontinued.

The panel further recommends that any claim by SlimFast that its SlimFast Plan is clinically proven also contain in the body of the claim a statement explaining the three components of the Plan: Per day, one sensible meal, two meals replaced with shakes, smoothies, or bars, and three snacks between meals to satisfy hunger.

The panel thanks SlimFast Foods Company and Simply Good Foods for participating in industry self-regulation in the interests of promoting truth in advertising.

### ADVERTISER'S STATEMENT

SlimFast agrees to comply with the NARB's decision and more prominently connect the "clinically proven" claim to the SlimFast Plan. SlimFast appreciates the NARB's careful review of the scientific evidence in the record and its recognition that SlimFast has proper substantiation

---

[3] The panel notes that an example of current SlimFast advertising complying with this recommendation is found in the record at R 625, SlimFast NAD submission dated April 27, 2021 at 3.

6952_290
Page 6



and may truthfully inform consumers that the SlimFast Plan is clinically proven to help consumers lose weight and keep it off.

SlimFast respectfully disagrees with the NARB's opinion that the "clinically proven" claim on the facing panel of product packaging is not properly qualified. SlimFast's marketing and advertising materials, including the packaging, consistently specify that the claim relates to the SlimFast Plan and not individual products. SlimFast never intended to imply that individual products, standing alone, are clinically proven to deliver any particular benefits, and it disagrees that any reasonable consumer would understand the claim to communicate that message. Nevertheless, SlimFast believes in transparent advertising and agrees to implement changes to more prominently reference the elements of the SlimFast Plan in connection with the "clinically proven" claim on product packaging.

© 2021. BBB National Programs.